James J. **FLYNN**

v.

**GENERAL MOTORS CORPORATION.**

Civ. A. No. 73–2198.

United States District Court,
E. D. Pennsylvania.

Oct. 19, 1977.

---

Joseph D. Shein, Philadelphia, Pa., for plaintiff.

George J. Lavin, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Plaintiff seeks a new trial following a verdict for the defendant, a verdict based upon special interrogatories which required the jury to reach the specific issues involved.

On October 2, 1971, the plaintiff was proceeding northwardly on the Northeast Extension of the Pennsylvania Turnpike, operating a 1964 Chevy Van, when he rear-ended a tractor-trailer, suffering injuries for which he sued the defendant two years later, October 1, 1973, contending that the exhaust system of the 1964 van was defectively designed in that exhaust fumes were discharged in front of the left rear wheel, and thereafter infiltrated the van causing the plaintiff to be overcome by fumes, thus losing control of the van and rear-ending the vehicle ahead.

In October 1976, following other, but unsuccessful, efforts to attach the case for trial, it was specially listed for trial in March 1977.

Upon attachment for trial the first issue faced by the Court was plaintiff's request for a continuance based upon the fact that about three weeks prior to attachment for trial, the plaintiff was first notified that the defendant had conducted certain tests on a similar 1964 Chevy van, equipped with an exhaust system identical to that on plaintiff's 1964 Chevy van, when originally marketed by the defendant. The plaintiff, contending that he knew nothing about the test and the results thereof, was, it now appears, more interested in a continuance than the test and the results thereof. Although notified of the test three weeks prior to trial, no effort was made, through the Court, to obtain any such information prior to trial. Upon assurance that all such information would forthwith be made available, the Court, desiring to bring this aged case to a conclusion, denied a continuance, with assurance to plaintiff's counsel that a recess or recesses would be afforded the plaintiff as necessary to study the results of such tests and obtain rebuttal evidence, if desired and available.

Thus, on the very first day of trial, and thereafter, the plaintiff had access to, but failed to look at or study, the reports of such test, the motion pictures, the strip charts and other raw data contained in defendant's file. Neither the plaintiff nor his experts studied or reviewed the items, although made available immediately prior to and throughout the trial.

At the conclusion of the defendant's case the Court again offered the plaintiff a recess and continuance, without limitation as to time and duration, and an opportunity to obtain rebuttal testimony. Only after both parties had rested their respective cases, only after the Court had ruled upon points for charge, did plaintiff again move for a continuance. Significantly, nowhere and at no time, even in his brief submitted in support of his motion for a new trial, has plaintiff suggested what efforts he made, if any, during the three-week period prior to trial and the two-week period of trial to obtain rebuttal evidence. During this period the plaintiff not only had an opportunity to study defendant's evidence, but to at least take steps to conduct his own tests or otherwise rebut the evidence of which he

complains. Considering the Court's willingness to recess the trial for an indefinite period, to afford the plaintiff every opportunity to study the defendant's data, take depositions and obtain rebuttal evidence, we find no merit in plaintiff's contentions. Unusual as it may be, the Court, without objection by the defendant, imposed no time limitations on such recess or continuance. Had plaintiff taken advantage of such opportunity only the defendant could have been prejudiced by the presentation of rebuttal evidence at a point in time closer to jury deliberations than the defendant's evidence.

Unless the Court is to relinquish substantial control over a crowded calendar, last-minute requests for a general continuance cannot automatically be honored. We did not, as plaintiff alleges in his brief, expect counsel "to engage in discovery during trial", obtain experts and at the same time prepare for the "day-to-day rigors of a protracted trial". Rather, we expected counsel to cooperate with the Court, by way of recesses and continuances, if necessary and desired, in an effort to proceed with trial after waiting almost four years. The plaintiff had four years in which to make tests such as were made by the defendant and to obtain experts. The plaintiff had weeks prior to trial, plus recesses and continuances offered by the Court during trial, to examine defendant's evidence and prepare rebuttal testimony and evidence or accept the proffered continuance at the close of defendant's case, thus eliminating a general continuance in a long-delayed case.

Finally, we have carefully reviewed the record and briefs submitted and conclude that the evidence concerning the defendant's testing by way of an exemplar vehicle was relevant, similar, admissible and with sufficient notice to the plaintiff, considering the opportunities afforded by the Court to rebut.

Plaintiff is understandably disappointed with the jury's verdict. He understandably assumes that the evidence complained of was controlling of the jury's verdict. He overlooks the fact that his own evidence was not necessarily conclusive of a plaintiff's verdict. Considering the number of 1964 Chevy Vans operated between 1964 and 1971 without a like result, the plaintiff's burden was most difficult, aside from any evidence offered by the defendant. To establish that the discharge of exhaust fumes in front of the left rear wheel constituted a design defect, in the face of live testimony of successive owners and operators, who had operated this very vehicle during the intervening seven-year period, and who experienced no fumes and no difficulties, was a huge burden which plaintiff faced from the inception of the case, aside from the test evidence produced by the defendant. In fact, the Court was hard put to deny defendant's motion for a directed verdict and in doing so afforded the plaintiff additional opportunities to either obtain rebutting evidence or at least point to some specific evidence which he reasonably believed he could and would produce given the continuance, at the inception of trial, requested by him or the extended recess or recesses proffered by the Court during trial and at the close of defendant's case.

It is not the function of the Court to deny a party a reasonable opportunity to produce all evidence relevant to his cause. Neither is it the Court's function to grant every motion for continuance where, at the inception of trial or thereafter, a party foresees that his evidence may be outweighed by that of the other party. Few cases would ever be brought to trial if every motion for continuance or other dilatory tactic were honored by the Court. For such delays the Court is held responsible by legislative, administrative and appellate authorities based upon regularly computerized records and statistics. Those pressures must never be used by the Court to justify an injustice to any party. But where, as here, a party has weeks *before* trial and weeks *of* trial to study the evidence complained of and does not do so, and where, as here, no effort is made to obtain rebutting evidence or to preliminarily investigate whether it *is* available or *will be* available following a continuance, and the Court not only tenders a recess or recesses, without limitation, for

such purpose, but seeks some indication that rebutting evidence will be or become available and, if so, within what period of time, we think the Court has no choice. It cannot be assumed that relevant, credible, qualified and non-fabricated evidence is at all times available on either side of any issue. Were it otherwise, the evidence on all issues would always be equally balanced with the result that justice would be defeated and the administration thereof aborted.[1]

We have not hesitated and do not hesitate to grant a new trial where justice requires. The resulting and additional burden upon the litigants, counsel and the Court is insignificant compared to the assurance that all parties have had their day in court and have been dealt with fairly and impartially. We could not live with any other result. Here, however, the application of the principles enunciated does not indicate that a new trial is warranted or justified. Accordingly, the plaintiff's motion will be denied.

---

1. Needless to say, the attempted withdrawal of counsel in the midst of trial, absent a conflict of interest, absent any expression of dissatisfaction by his client or other compelling reason, could well bring the system to a virtual standstill. Such a result would not comport with the mutual obligations and duties existing between Court and counsel.